UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *TIMOTHY SPRINGER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 04-130-P-H* |
| | ) | |
| *TOWN OF WINDHAM, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

***RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT***

The defendants, the Town of Windham, Richard Lewsen, Peter Fulton, Jeff Smith and Ernest MacVane, move for summary judgment on all fourteen counts of the complaint. The plaintiff has consented to the entry of summary judgment against him on Count XI, which alleges intentional infliction of emotional distress. Plaintiff's Objection to Defendants' Motion for Summary Judgment, etc. ("Opposition") (Docket No. 16) at 10; Complaint and Demand for Jury Trial ("Complaint") (Docket No. 1) ¶¶ 106-09. I recommend that the court grant the motion with respect to the remaining counts.

**I. Summary Judgment Standards**

**A.  Federal Rule of Civil Procedure 56**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute

1

over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each

numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted.)).

## II. Factual Background

The statements of material facts filed by the parties present the following appropriately-supported undisputed material facts.

The plaintiff and Darryl Twitty spent the evening of June 29 and the early morning of June 30, 2002 at Harmony Hall in Gray, Maine, arriving back at the plaintiff's home at approximately 1:30 a.m. Plaintiff's Statement of Material facts ("Plaintiff's SMF") (included in Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 17), beginning at 6) ¶¶ 1-2; Reply to Plaintiff's Response to Defendant's [sic] Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 20) ¶¶ 1-2. While at Harmony Hall, the plaintiff drank beer. *Id.* ¶ 27. On June 30, 2002 at approximately 1:34 a.m., John Perruzzi, dispatcher for the police department in Windham, Maine, received a call from Marlene Cleaves. Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("Defendants' SMF") (Docket No. 10) ¶ 1; Plaintiff's Responsive SMF ¶ 1. Cleaves told Perruzzi that she was house-sitting at 44 Woodland Road in Windham and that there was a loud, angry disturbance going on outside. *Id.* ¶ 2. She told Perruzzi that two men were fighting and shouting. *Id.* ¶ 3. She told Perruzzi that one man stated words to the effect of "Do I have to go get my gun?" *Id.* She also told Perruzzi that the two men continued to argue loudly after they entered the house at 48 Woodland Road. *Id.* The plaintiff resided at 48 Woodland Road. Plaintiff's SMF ¶ 28; Defendants' Responsive SMF ¶ 28.

Perruzzi dispatched defendant officers Jeff Smith and Ernest MacVane and defendant sergeant Peter Fulton to the scene of the disturbance. Defendants' SMF ¶ 4; Plaintiff's Responsive SMF ¶ 4.[1] The officers were told about the report of the fight, the threat of a gun and that two people had entered the house. *Id.* ¶ 5. While the officers were en route, Cleaves stayed on the telephone with Perruzzi and continued to report on the activities of the men at 48 Woodland Road. *Id.* ¶ 6. Perruzzi gave the officers directions to 48 Woodland Road and advised that that a domestic altercation appeared to be

---

[1] The parties' statements of material facts do not mention the rank of Smith, MacVane and Fulton, but there does not appear to be any dispute about their respective ranks. *See* Defendants' Motion for Summary Judgment, etc. ("Motion") (Docket No. 9) at 1.

ongoing at the house. *Id*. ¶ 7.[2] Based on the information they received from dispatch, the officers considered the situation to be one of domestic violence. *Id*. The officers arrived at the house at approximately 1:43 a.m. *Id*. ¶ 8.

All three officers had received training in search and seizure, warrantless entries, domestic violence situations, deadly weapons and the use of force. *Id*. ¶ 9. The officers were trained that in domestic violence situations they should identify the aggressor, separate the parties, investigate the scene and determine whether anyone was injured or in need of assistance. *Id*. ¶ 10. Fulton, as supervisor and senior officer, approached the house first. *Id*. ¶ 11. From outside the screened doorway, the officers could only see the plaintiff inside the house. *Id*. The plaintiff alleges in his complaint that he refused to allow Fulton into the house and told the officers to leave the premises. *Id*. ¶ 12. The officers told the plaintiff that they were at his residence because they had received a complaint. Plaintiff's SMF ¶ 6; Defendants' Responsive SMF ¶ 6. Because only one person was visible, the officers entered the house to do a protective sweep and to determine if anyone needed assistance. Defendants' SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14.

The officers identified the plaintiff, who appeared to be intoxicated, as the aggressor. *Id.* ¶ 15. The plaintiff alleges that the first two officers who entered the house pushed him aside. *Id*. ¶ 16. He believes that these two officers were MacVane and Fulton. Plaintiff's SMF ¶ 12; Defendants' Responsive SMF ¶ 12. The plaintiff was not injured as a result of being moved aside. Defendants' SMF ¶ 16; Plaintiff's Responsive SMF ¶ 16. While doing a protective sweep of the house, Fulton and MacVane located and identified Darryl Twitty. *Id*. ¶ 17. The officers ran Twitty's name through dispatch and discovered an outstanding warrant for his arrest. *Id*. MacVane then placed Twitty under

---

[2] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 7, but the denial is not responsive to the factual assertions made in the paragraph, which is supported by the citations to the summary judgment record given by the defendants in support of the paragraph. The paragraph is accordingly deemed admitted.

arrest. *Id*. The plaintiff repeatedly demanded that the officers get out of his house. *Id*. ¶ 18. The officers explained that they were in the house responding to a report of a fight and a gun and would leave as soon as they identified everyone in the house and ensured that everyone was safe. *Id*. ¶ 19.

The plaintiff alleges that he was shouting and cursing at MacVane. *Id*. ¶ 20. He alleges that he turned away from MacVane and took a step toward another officer, whereupon MacVane grabbed his arm and swung it around, causing the plaintiff's hand to come into contact with a door, resulting in an injury. *Id*. Neither the officers nor Twitty saw any injury to the plaintiff on June 30, 2002. *Id*. ¶ 21. The plaintiff did not complain of any injury to the officers while they were in his house. *Id*. After dispatch informed the officers that there were no outstanding warrants for the plaintiff's arrest and after determining that no one in the house was in need of assistance, the officers left the house by 1:54 a.m. *Id*. ¶ 23.

The Windham police department has procedures for reviewing complaints against officers. *Id.* ¶ 24. The department has never disciplined Fulton, Smith or MacVane for any violation of departmental policies or practices. *Id*. The duties of defendant Lewsen, the chief of police for Windham, include preparing and promulgating policies and practices, preparing and supervising training, investigating complaints and supervising officers. *Id*. ¶ 26; Plaintiff's SMF ¶ 15; Defendants' Responsive SMF ¶ 15. A study of the Windham police department done by the Maine Chiefs of Police Association noted several areas that needed improvement, including communication between Lewsen and other officers. Plaintiff's SMF ¶¶ 17-18; Defendants' Responsive SMF ¶¶ 17-18. The study also noted that there was no system for employee evaluations and that there was a lack of trust between Lewsen and the officers in the department. *Id*. ¶¶ 20-21.

6

The plaintiff called the Windham police department and spoke to Lewsen about what happened at his home on June 30, 2002. *Id.* ¶ 33. Lewsen did not refer the complaint for investigation at that time. *Id.* An internal investigation began on December 31, 2002. *Id.* ¶ 34.

### III. Discussion

The complaint asserts claims against each of the defendants under 42 U.S.C. § 1983 and the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4682 (Counts I-VI); a civil conspiracy claim against all of the defendants (Count VII); and tort claims against defendants MacVane, Smith and Fulton (Counts VIII-X, XII-XIV. The defendants present arguments specific to each type of claim.

#### A. Claims Under Section 1983 and MCRA Against Officers

Counts I-III and VI assert claims under 42 U.S.C. § 1983 and the Maine Civil Rights Act against Fulton, MacVane and Smith. Complaint ¶¶ 53-70, 87-89. These defendants contend that they are entitled to qualified immunity against the claims of violation of the plaintiff's due process rights alleged in those counts and to judgment on the claims of use of excessive force alleged in those counts. Motion at 5-10. The disposition of the federal claims under section 1983 controls the claim under the MCRA. *Forbis v. City of Portland*, 270 F.Supp.2d 57, 61 (D. Me. 2003) (excessive force claim); *Jenness v. Nickerson*, 637 A.2d 1152, 1159 (Me. 1994) (qualified immunity).

*1. Qualified Immunity.* Each of the section 1983 counts alleges violation of the plaintiff's right to due process of law. Complaint ¶¶ 55, 61, 67. The officer defendants contend that they are entitled to summary judgment due to qualified immunity on this aspect of these claims. They rely on the doctrine of exigent circumstances. Motion at 5-7.

> [L]aw enforcement officers hailed [sic] into court in their individual capacities to respond to damages are entitled to qualified immunity from suit in civil rights actions under section 1983, provided their conduct did not violate clearly established statutory or constitutional rights of which a reasonable police officer would have known.

*Hegarty v. Somerset County*, 53 F.3d 1367, 1372 (1st Cir. 1995) (citation and internal punctuation omitted). The Fourth and Fourteenth Amendments to the United States Constitution prohibit a warrantless entry into a residence except in exigent circumstances and with probable cause. *Id*. at 1373.

> [T]he qualified immunity inquiry does not depend on whether the warrantless entry was constitutional, but allows as well for the inevitable reality that law enforcement officials will in some cases reasonably but mistakenly conclude that their conduct is constitutional, and that those officials — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable. In other words, qualified immunity sweeps so broadly that all but the plainly incompetent or those who knowingly violate the law are protected from civil rights suits for money damages.

*Id*. (citation and internal punctuation and emphasis omitted).

> The exigent circumstances usually recognized include: (1) risk to the lives or health of the investigating officers; (2) risk that the evidence sought will be destroyed; (3) risk that the person sought will escape from the premises; and (4) "hot pursuit" of a fleeing felon.

*United States v. Beaudoin*, 362 F.3d 60, 66 (1st Cir. 2004). The First Circuit also recognizes as an exigent circumstance "an emergency situation in which police must act quickly to save someone's life or prevent harm." *Id*.

> Generally, under the emergency doctrine, there must be a reasonable basis, sometimes said to be approximating probable cause, both to believe in the existence of the emergency and to associate that emergency with the area or place to be searched. The analysis must be with reference to the circumstances confronting the officer, including, as one commentator has put it, the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.

*Id*. (citations and internal quotation marks omitted). "[T]he inquiry determining the existence of an exigency is essentially one of reasonable suspicion." *Id*. at 67.

The plaintiff argues that exigent circumstances and probable cause did not exist at the time the officers entered his residence. Opposition at 4-5. He asserts that (i) "[t]here was no report by Mrs.

Cleaves of seeing a gun or hearing gun shots fired;" (ii) "there was no information relayed by Mrs. Cleaves from which the officers could have inferred that this was a situation involving domestic violence;" the officers could see only one person inside the residence;[3] "Mrs. Cleaves['] report to the police is diametrically opposed to Plaintiff['s] recitation of the facts; there was no report of any physical injuries; "upon arrival to [sic] Plaintiff's residence none of the basic information regarding the complaint phoned in by Mrs. Cleaves was confirmed," apparently because the officers did not hear any disturbance coming from inside the residence or see a gun or any evidence that a gun had been discharged; and the complaint was "mischaracterized" as one involving domestic violence. *Id.* This argument misses two crucial points. First, the plaintiff has not provided evidentiary support via his statement of material facts to support the assertions that "none of the basic information regarding the complaint . . . was confirmed" upon the officers' arrival or that they did not hear any disturbance from inside the residence or see a gun or any evidence that a gun had been discharged. The court therefore cannot consider those factual assertions. Second, the test for the existence of exigent circumstances is not whether the situation presented to the officers actually involved domestic violence, as that term is defined by Maine law, or whether the complaining witness's report is subsequently borne out by the facts or contested by the plaintiff.

> [T]he appropriateness of warrantless entry under the emergency doctrine cannot be determined by the extent to which human life was actually in danger. Instead, when policemen . . . are confronted with evidence which would lead a prudent and reasonable official to see a need . . . to protect life or property, they are authorized to act on that information, even if ultimately found erroneous. That no victims are found, or that the hurried and incomplete information on which officers have to base their decisions ultimately proves to be false or inaccurate, does not render the action any less lawful. As long as the officers reasonably believe an emergency

---

[3] The plaintiff's assertion that he was "seated in his living room when the police arrived at this home," Opposition at 7, is not supported by the citation given to his statement of material facts, which provides only that he was in his living room at the time, not whether he was standing or sitting. Plaintiff's SMF ¶ 9.

9

> situation necessitates their warrantless search, such actions must be upheld as constitutional.

*United States v. Lawlor*, 324 F.Supp.2d 81, 86 (D. Me. 2004) (citations and internal quotation marks omitted).

In this case, the defendant officers had been told that following a loud altercation outside, during which a possible threat to use a gun was made, the disputants had entered the plaintiff's house. The plaintiff refused to allow the officers to enter the house. The officers did not know whether another person was inside the house and reasonably believed that another person was present and might be injured. "If there had been an injured or dangerous person inside the house, the police would have been foolish to delay investigation." *Id*. at 88 (citation and internal quotation marks omitted). The officers' belief that an emergency situation necessitated their warrantless search was reasonable; they are entitled to the protection of qualified immunity from the charges based on due process.

*2. Excessive force*. Counts I-III and VI all include allegations of the use of excessive force by the defendant officers. Complaint ¶¶ 54, 60, 66, 88. The plaintiff contends that excessive force was used in two instances: in obtaining entry to his residence and when MacVane "swung him around." Opposition at 7.[4] With respect to the first instance, the plaintiff asserts that "if as Plaintiff has argued above the entrance into Plaintiff's home was a violation of Plaintiff's constitutional rights then any physical contact used by Defendant's [sic] to remove Plaintiff from the doorway of the home to gain entry is necessarily excessive." *Id*. I have determined that no such violation could be established on the evidence presented. With respect to the second instance, the plaintiff merely states in conclusory fashion that, taken in the light most favorable to him, the fact that MacVane swung him around as he was turning away from MacVane, causing the plaintiff's hand to come into contact with a door,

---

[4] The plaintiff asserts that "Defendant MacVane swung him around which ultimately caused him to break his finger." Opposition at 7. Neither paragraph 14 of his statement of material facts, the authority cited for this assertion, nor any other paragraph of the plaintiff's (*continued on next page*)

10

resulting in an injury, Defendants' SMF ¶ 20, Plaintiff's Responsive SMF ¶ 20, "establish[es] a claim of excessive force and due to the Defendants' denial of any physical contact with Plaintiff . . . there exists a genuine issue of material fact . . . ." *Id*. The latter argument ignores the fact that the officer defendants' argument concerning excessive force treats the allegations in the complaint as if they were true. Motion at 8 n.5.

All claims that police officers have used excessive force are analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Liability may be imposed for the use of excessive force even in the absence of serious injury. *Bastien v. Goddard*, 279 F.3d 10, 12 (1st Cir. 2002). In order to prevail, a plaintiff

> must demonstrate that the police defendant's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation.

*Id*. at 14 (citation omitted). "[T]he Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present." *Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994).

The plaintiff's sole argument with respect to the officers who moved him out of the way when entering his residence is without merit. Defendants Fulton and Smith are accordingly entitled to summary judgment on any claims of excessive force, as only MacVane is involved in the second alleged incident of excessive force. The plaintiff's argument concerning the injury to his hand requires only slightly more attention. He admits that he was shouting and cursing at MacVane, Defendants' SMF ¶ 20, Plaintiff's Responsive SMF ¶ 20, and that he was arguing with MacVane, Plaintiff's SMF ¶ 14, in the course of which he turned away from MacVane and took a step toward another officer, *id*.

---

statement of material facts states that the plaintiff's finger was broken.

11

Under these circumstances, it was not unreasonable for MacVane to reach for the plaintiff's arm, in order to prevent him from going closer to the other officer; it was not unreasonable for MacVane to think that the plaintiff might be about to strike or hold the other officer. None of the facts in the summary judgment record can reasonably be construed to allow the drawing of an inference that MacVane, by swinging the plaintiff around, was likely to cause the plaintiff injury or to make the plaintiff's hand strike a door. For all that appears in the summary judgment record, MacVane is entitled to summary judgment on the excessive force claims.

### B. Claims Against Defendant Lewsen

Count IV asserts a claim under section 1983 against defendant Lewsen. Complaint ¶¶ 71-80. Count VI appears to allege that Lewsen, along with all other defendants, violated the Maine Civil Rights Act. *Id*. ¶¶ 87-89. Lewsen contends that he is entitled to qualified immunity on these claims.[5] The parties agree that these claims concern Lewsen's liability as a supervisor of the officers who responded to Cleaves's 911 call. Motion at 10, Opposition at 7-8. Supervisory liability under section 1983 cannot be predicated on a *respondeat superior* theory. *Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir. 1997). A supervisor can be held liable only on the basis of his own acts or omissions. *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996). A supervisor

> can be held liable if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.

*Seekamp,* 109 F.3d at 808 (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988)) (internal punctuation omitted). The indifference required must be deliberate, reckless or

---

[5] Both the defendants and the plaintiff refer to the civil rights claims asserted against Lewsen as Counts I and II. Motion at 10-11; Opposition at 7. However, in the only complaint filed with the court in this action, those claims appear in Counts IV and VI.

callous, and there must be proof that the supervisor's conduct led inexorably to the constitutional violation. *Id*.

The plaintiff has submitted evidence concerning the training provided to the officer defendants and a study of the department, for which he does not provide a date, which criticized Lewsen and the department in some respects. Plaintiff's SMF ¶¶ 15-26. However, as I have already discussed, the plaintiff has failed to present sufficient evidence of a constitutional violation by the officers to allow that issue to be decided at trial. Accordingly, he cannot show that the behavior of Lewsen's subordinates resulted in a constitutional violation, and Lewsen is therefore entitled to summary judgment on these counts.

### C. Claim Against the Town

Count V of the complaint alleges that policies and customs of the defendant town caused the deprivation of the plaintiff's clearly established constitutional and statutory rights under section 1983. Complaint ¶¶ 81-86. The defendants contend that the town is not liable under Section 1983 because the officers did not commit any constitutional violation. Motion at 11-12. The plaintiff agrees that he can recover on this claim "only . . . if there is liability by the subordinate officers in this matter." Opposition at 9. In general, a town may be vicariously liable for the actions of its police officers even if those officers enjoy immunity from suit. *Napier v. Town of Windham*, 187 F.3d 177, 191 (1st Cir. 1999).

> A municipality's position in a § 1983 suit differs from that of the individual defendants in two key ways. First, the municipality enjoys no immunity from damages liability under § 1983. This means that it is not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity. Second, a municipality cannot be held liable under a respondeat superior theory. This means that even if the individual defendants are liable, the municipality may not be.

*Fletcher v. Town of Clinton*, 196 F.3d 41, 55 (1st Cir. 1999) (citations and internal punctuation omitted). The latter consideration is not applicable here. With respect to the possibility that a town may be held liable even when its officers are entitled to qualified immunity, when, as here, the plaintiff bases his claim against the municipality on an alleged failure to train police officers adequately, Opposition at 9, the plaintiff must show a direct causal link between the municipal action or inaction and "the deprivation of federal rights," *Fletcher*, 196 F.3d at 55. I have concluded that the plaintiff has not presented sufficient evidence of a deprivation of a federal right to allow him to proceed to trial on that issue. Accordingly, the town is entitled to summary judgment on Count V.

### D. State Tort Claims

Counts VIII-X and XII-XIV[6] allege that each of the officer defendants committed the torts of assault and trespass. Complaint ¶¶ 94-105, 110-121. The officers contend that they are entitled to immunity on these claims under the Maine Tort Claims Act because their alleged actions were discretionary acts. Motion at 15-17. Municipal employees in Maine are absolutely immune from personal civil liability for performing or failing to perform any discretionary function or duty, whether or not the discretion was abused, 14 M.R.S.A. § 8111(1)(C), and for any intentional act or omission within the course and scope of employment, so long as the employee's actions are not found to have been in bad faith, 14 M.R.S.A. § 8111(1)(E). A warrantless forcible entry and subsequent use of force qualifies as a "discretionary function" for purposes of this statute. *See, e.g., Hegarty v. Somerset County*, 848 F. Supp. 257, 269 (D. Me. 1994), *rev'd in part on other grounds*, 53 F.3d 1367 (1st Cir. 1995); *McLain v. Milligan*, 847 F. Supp. 970, 973, 977-78 (D. Me. 1994); *Leach v. Betters*, 599

---

[6] The defendants refer to the affected counts as IV-VII, Motion at 15, but I have again used the numbers of the counts in which these claims are presented in the only complaint that has been filed in this case. Counts IV and V in the filed complaint expressly arise only under 42 U.S.C. § 1983. Count V expressly invokes the Maine Civil Rights Act. Count VII is a state-law civil conspiracy count that I will address below. The defendants also suggest that defendant Lewsen is implicated in the counts that are subject to the Maine Tort Claims Act. *Id*. at 16-17; Defendants' Reply Brief in Response to Defendants' Motion for Summary Judgment ("Reply") (Docket No. (*continued on next page*)

14

A.2d 424, 426 (Me. 1991). Discretionary function immunity is afforded officers "except to the extent they act in a manner so egregious as to clearly exceed, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers]." *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996) (citation and internal quotation marks omitted). Even when all reasonable inferences are drawn in the plaintiff's favor from the undisputed material facts, and even if all of the facts alleged by the plaintiff are taken as true, none of the alleged conduct of the officers in this case approaches the level of egregiousness that would deprive them of discretionary function immunity under the state statute. Accordingly, the officer defendants are entitled to summary judgment on Counts VIII-X and XII-XIV.

### E.  Civil Conspiracy

Count VII of the complaint alleges that all of the defendants "acted in concert" to commit "independently recognized torts contained herein." Complaint ¶¶ 91-92. In order to recover under Maine law on this civil conspiracy claim, the plaintiff must establish that an independently recognized tort has been committed. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 708 A.2d 283, 286 (Me. 1998). The plaintiff contends that "the claims for Assault and Trespass survive summary judgment and therefore provide a basis for the conspiracy claim." Opposition at 12. As discussed above, the claims for assault and trespass do not survive the defendants' motion for summary judgment. As a result, the defendants are entitled to summary judgment on this count. *See McNally v. Mokarzel*, 386 A.2d 744, 747-48 (Me. 1978) (complaint failed to state claim for civil conspiracy where defendants absolutely immune on underlying tort claim).

### IV.  Conclusion

---

19) at [4]. It is not possible to read any such implication into Counts VIII-X or XII-XIV.

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** in its entirety.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25h day of March, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge